INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, AND UAW LOCAL 136, PLAINTIFFS *v.* U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 90–07–00325

(Decided October 2, 1991)

*Jordan Rossen*, General Counsel, International Union, UAW, *Leonard R. Page*, Associate General Counsel, International Union, UAW, (*Richard W. McHugh*), Associate General Counsel, International Union, UAW, for plaintiffs.
*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Vanessa P. Sciarra*); *Gary Bernstecker*, United States Department of Labor, for Defendant.

MEMORANDUM OPINION

DiCARLO, *Judge*: Plaintiffs, former employees of a Chrysler assembly plant in Fenton, Missouri, challenge the Department of Labor's denial of certification for trade adjustment assistance benefits under 19 U.S.C. § 2272 (1988). This Court has jurisdiction under 19 U.S.C. § 2395 (1988) and 28 U.S.C. § 1581(d)(1) (1988).

BACKGROUND

Trade adjustment assistance is available to workers separated from employment when Labor determines, *inter alia,*

> that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272 (a)(3) (1988). Labor denied plaintiffs' petition claiming that they did not satisfy this requirement.

Plaintiffs assembled "G-body" and "J-body" vehicles, which Chrysler sells as Dodge Daytonas and Chrysler LeBarons. The Daytona is a two-door vehicle with a wheelbase of 97 inches. The 1988 Daytona had a base price of $9,409 and the 1989 model had a base price of $9,734. Revised Brief In Support of Petitioners' Rule 56.1 Motion For Review of Administration Record at 3–4 ("Petitioners' Brief"). The LeBaron is a two-door vehicle with a wheelbase of 100.3 inches and is manufactured in coupe

and convertible versions. *Id.* at 3. The LeBaron coupe had a 1988 base price of $11,420 and the convertible had a base price of $13,920. In 1989, the base price of the coupe was $11,944 and the base price of the convertible was $14,475. *Id.* at 3–4.

In order to determine whether increased imports of like or directly competitive articles contributed to the workers' separations, Labor examined changes in domestic and import market share. Labor began its analysis by using an accepted industry source to ascertain the characteristics of the subject vehicles and compiling a list of domestic and imported models it considered "like or directly competitive" with the subject vehicles. Next, Labor compared changes in the amount of retail sales to determine whether the decrease in sales of the subject vehicles is attributable to an increase in sales of domestic or imported vehicles.

Labor found that the Daytona and LeBaron would compete with cars having the following characteristics:

1. Base (stripped) prices $10,000–$12,000;
2. Fully-equipped prices significantly under $20,000;
3. Two-door 2+2 or convertible body styles;
4. Curb weight under 3000 pounds;
5. Wheel base no more than 101 inches;
6. Significant sporting characteristics.

Conf. R. 47; *see also* Defendant's Memorandum In Opposition To Plaintiffs' Motion For Judgment Upon the Administrative Record at 9. ("Defendant's Brief") (footnotes omitted).

## DISCUSSION

Labor's findings must be upheld if they are supported by substantial evidence in the record and are in accordance with law. 19 U.S.C. § 2395 (1988); *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd sub. nom. Woodrum v. United States*, 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984). In addition, Labor's determination must be based on a reasoned analysis. *International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Marshall*, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978). Upon a showing of good cause, a reviewing court may remand an action for further investigation. 19 U.S.C. § 2395(b) (1988).

Plaintiffs contend several of Labor's findings are not supported by substantial evidence in the administrative record. First, plaintiffs claim Labor's findings regarding the selection of vehicles based on their fully-equipped prices are not supported by substantial evidence because Labor does not define "fully-equipped" and the record does not contain the full-equipped prices of the models selected for analysis. Government counsel did not address this argument in her brief and conceded at oral argument the record does not contain a definition of "fully-equipped." The Court cannot determine whether Labor's findings are supported by substantial evidence in the absence of any indication by Labor as to what kind of options it would include under this criterion and whether the prices it used in comparing vehicles include those options.

Second, plaintiffs claim Labor's findings regarding sales of the Grand Am, Skylark and Calais are not supported by substantial evidence. According to plaintiffs, although Labor stated the two-door 2+2 criterion was a very important criterion, Labor's sales data for those models included both two-door and four-door sales, which exaggerated the size of the domestic market share. At oral argument, government counsel said Labor used the combined statistics because the sales statistics for two-door versions of those domestic models were not publicly available and Labor did not attempt to obtain them from the manufacturer. Government counsel claims that in any event Labor determined the error produced by including the four-door sales figures was *de minimis.* Defendant's Brief at 13 n.13.

There is no evidence in the record indicating Labor knew the extent to which its sales figures for three domestic models included four-door sales and that the error produced by inclusion of those sales was *de minimis. Post hoc* rationalizations of government counsel may not be relied upon to uphold agency action. *Burlington Truck Lines, Inc. v. United States,* 317 U.S. 156, 168–69 (1962): *U.H.F.C. Co. v. United States,* 916 F.2d 689, 700 (Fed. Cir. 1990). Labor's findings regarding sales of the Grand Am, Skylark and Calais are not supported by substantial evidence.

Third, plaintiffs claim Labor's findings regarding its 2+2 criterion are not supported by substantial evidence because the record contains no data for rear seat legroom, headroom or width. For example, Labor excluded the Beretta, a domestic vehicle which had declining sales during the period of investigation, on the basis that it had a full rear seat. At oral argument, government counsel argued that findings under this criterion should be determined according to agency expertise, but stated the record does not contain any data regarding rear seat dimensions. The Court cannot determine whether Labor's findings are supported by substantial evidence in the absence of an indication by Labor as to how it measures rear seat room.

Next, plaintiffs claim Labor's determination lacks a reasoned analysis. First, plaintiffs claim that since the stripped base price of the Daytona is lower than $10,000, it was unreasonable for Labor to establish a base price criterion of $10,000 to $12,000. Government counsel responds that Labor considered that with the addition of an automatic transmission the price of the Daytona falls within the base price criterion, Defendant's Brief at 14; *see also* Conf. R. 48, but stated at oral argument that an automatic transmission was an extra for the Daytona. Government counsel also claims that Labor used the Daytona ES4, which had a base price of $10,834, when comparing 1989 base prices.

While Labor has great discretion in choosing its methodology, the record is unclear as to whether Labor used base prices which included extras when comparing vehicles under its stripped base price criterion. Also, the record does not support counsel's argument that Labor used the Daytona ES4 for comparison of base prices. On remand, Labor

should explain whether it compares vehicles with extras and vehicles without extras when considering vehicles under its stripped base price criterion.

Second, plaintiffs claim Labor failed to reasonably explain its application of its base price criterion. For example, Labor included in the import segment four vehicles with base prices between $6,571 and $9,411 *over* the base price of the Daytona, but did not include comparably priced vehicles in the domestic segment. Also, plaintiffs claim Labor unreasonably excluded the Beretta from the domestic segment on the basis that its $10,535 (1988) and $11,000 (1989) base prices were lower than those of other models it selected. Plaintiffs argue Labor's failure to consistently apply its base price criterion is accentuated by the fact that Labor criticized plaintiffs' own proposed classification system for failing to consider price as an important differentiation factor.

Government counsel counters that Labor acknowledged several of the imports "bump up against the upper price limit," but were included in the segment because of their significant sporting characteristics, which Labor determined would be a major consideration for buyers contemplating the Daytona or LeBaron. Defendant's Brief at 15. Government counsel continues that the Daytona or LeBaron is purchased by a "buyer with discretionary income to spend on a vehicle that would function as much of a personal statement as a mode of transportation." Defendant's Brief at 15 n.15. Counsel does not address plaintiffs' argument regarding the Beretta.

The record does not support government counsel's arguments that Labor considered the significant sporting characteristics criterion to be more important than the price criterion or that prospective Daytona or LeBaron buyers seek to make personal statements. As noted above, *post hoc* rationalizations of government counsel may not be relied upon to uphold agency action. *See Burlington Truck Lines*, 371 U.S. at 168–69. Labor has failed to provide a reasoned explanation as to its selection of vehicles under its base price criterion, including its exclusion of the Beretta.

Finally, plaintiffs claim that Labor improperly excluded the Beretta from the domestic segment on the basis that it lacked significant sporting characteristics since the Beretta's styling, suspension and engine selections place it in the segment. Government counsel responds that since the Beretta was not available in a 2+2, Labor rejected the Beretta because it did not meet the "critical requirement" of significant sporting characteristics and that Labor also found the Beretta was not available with a high performance engine option.

The record does not indicate, however, that the significant sporting characteristics criterion is the "critical requirement." Also, Labor did not explain why a buyer looking for a car such as the Daytona or LeBaron would only purchase a car with a high performance engine and why body shape and style do not meet the significant sporting characteristics criterion. Labor did not establish engine options as a separate cri-

terion for the segment. In addition, Labor did not explain whether the Beretta possessed other sporting characteristics which may be significant, such as a particular suspension system or body shape and style.

CONCLUSION

For the above stated reasons, this action is remanded to the Department of Labor.