SKF USA, Inc., AB SKF; SKF GmbH, SKF Gleitlager GmbH, SKF France and Sarma, RIV-SKF Industries, S.p.A., SKF Sverige, AB, and SKF (U.K.) Ltd, plaintiffs v. U.S. Department of Commerce and Robert A. Mosbacher, Secretary, U.S. Department of Commerce, defendants, and Torrington Co., defendant-intervenor

Court No. 89–06–00330

(Dated January 7, 1992)

*Howrey & Simon (Herbert C. Shelley)* for plaintiffs.

*Stuart M. Gerson*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Jeanne E. Davidson)*; of counsel: *Dean A. Pinkert*, Attorney-Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, for defendants.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, David Scott Nance* and *Myron A. Brilliant)* for defendant-intervenor.

## OPINION AND ORDER

Tsoucalas, *Judge*: Plaintiffs, SKF USA, Inc., AB SKF, SKF GmbH and SKF Gleitlager GmbH, SKF France and Sarma, RIV-SKF Industries, S.p.A., SKF Sverige AB and SKF (U.K.) Limited, (collectively"SKF"), challenged the final determination of the Department of Commerce, International Trade Administration ("Commerce" or "ITA") in *Final Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany* ("Final Determinations"), 54 Fed. Reg, 18,992 (1989). This Court, in *SKF USA, Inc. v. United States*, 15 CIT 152, 762 F. Supp. 344 (1991), affirmed in part and remanded the case to the ITA for reconsideration of the issue of foreign market value regarding the home market viability calculations for ball bearings from Sweden and Italy. Plaintiffs now move pursuant to Rule 7

of the rules of this Court to vacate, in part, the remand determination, dated June 20, 1991, which they assert ignores the decision of this Court in *SKF*. Defendants contend that the ITA did follow the instructions of the Court in reaching its remand determination, which reaffirmed the ITA's original conclusions. Given the dispute, a brief review of the Court's findings and instructions upon remand is in order.

In *SKF*, this Court affirmed the ITA's determination that petitioner had standing to file the antidumping petition on behalf of the relevant domestic industries and also affirmed the finding that SKF's wheel hub units and aircraft bearings fell within the ambit of the investigations. Furthermore, given "the statutory time constraints involved in an antidumping investigation and the unique complexity of the bearings investigations," the Court affirmed the ITA's decision to test the viability of SKF's home markets based on the five classes of antifriction bearings involved in the case, rather than based on the myriad categories of such or similar merchandise, as is normally done. *SKF*, 15 CIT at 160, 762 F. Supp. at 351.[1] *See* 19 U.S.C. § 1677b(a)(1)(A) (1988).

However, the Court found that, in testing the viability of SKF's Italian and Swedish home markets for ball bearings, the ITA erred in two ways. First, Commerce failed to state whether the home markets for finished ball bearings were viable, and second, the ITA used an unnecessary and unjustifiable test for viability.

The ITA initially tested the viability of the home market for ball bearings by comparing SKF's sales of both finished ball bearings and parts of ball bearings in the home market to SKF's sales of both finished ball bearings and parts of ball bearings in all its non-U.S. markets. The resulting percentage was less than five percent, indicating that the home market was not viable. *See* 19 C.F.R. § 353.4 (1988).[2] After receiving complaints that the inclusion of parts had warped the results because SKF did not sell ball bearing parts in the home market, the ITA tested the viability for finished ball bearings, *i.e.*, parts excluded, and the percentage grew to greater than five percent.[3] The ITA thus concluded that the inclusion of parts had, in fact, "skewed the results of the viability test." *Final Determinations*, 54 Fed. Reg. at 19,022.

The ITA then proceeded to "examine[ ] whether we would obtain more identical matches to products sold in the United States if we used home market or third country sales." *Id*. The market with the most identical

---

[1] The five classes of bearings are ball bearings, spherical roller bearings, cylindrical roller bearings, needle roller bearings and spherical plain bearings.

[2] The ITA's regulations establish a benchmark of five percent for determining whether the home market is viable and thus whether it may be used for the less than fair value comparisons. That regulation is now found at 19 C.F.R. § 353.48 (1991).

[3] In *SKF*, the Court faulted the ITA for failing to disclose the percentage. In the remand determination, the ITA again did not disclose the percentage, though it made clear that the home market for finished ball bearings accounts for significantly more than five percent of SKF's non-U.S. sales of finished ball bearings, and therefore, was viable. *Remand Determination* at 6.

matches, in this case the third country, was the one chosen as the foreign market value to be used for comparison to the United States price for purposes of determining the dumping margin. The Court, in *SKF*, characterized this examination as an inappropriate third viability test, not supported by any statute or regulation, which was unnecessary given the ITA's finding that the results of the original test were skewed. *SKF*, 15 CIT at 161, 762 F. Supp. at 352. Commerce's Remand Determination attempts to characterize this test as a "tie-breaker" to ascertain which of the first two tests was "more usable." Remand Determination at 7.

Since, as Commerce itself acknowledges, the inclusion of parts skewed the results of the viability test, the only reasonable alternative for the ITA was to test the viability of the home market for finished ball bearings *separately* from that for parts of ball bearings. As parts were included in the investigation, the home market for parts should have been tested. However, there is no reason why parts and finished bearings had to be tested together. Indeed, the difference between a finished bearing and its parts is fundamental and the two cannot be considered "such or similar merchandise" for purposes of the viability tests. *See* 19 U.S.C. § 1677b(a)(1)(A). Therefore, the Court found that the viability of the home market for finished ball bearings must be examined separately from that for their component parts.[4]

The ITA is accorded substantial deference in its choice of methodology when it conducts antidumping investigations. *Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1050, 700 F. Supp. 538, 558 (1988), *aff'd,* 898 F.2d 1577 (Fed. Cir. 1990). The Court's role is to "ascertain whether there was a rational basis in fact for the determination," and to uphold those determinations which are supported by substantial evidence in the administrative record. *American Lamb Co. v. United States,* 785 F.2d 994, 1004 (Fed. Cir. 1986). While the Court is loathe to tread upon Commerce's broad discretion, this case constituted an instance where Commerce exceeded its mandate and the Court's intervention was required. As a result, the ITA was instructed

> to make a definitive determination as to whether or not the home markets for *finished* ball bearings from Sweden and Italy were viable. If they were viable, the ITA is instructed to recalculate [foreign market value] using home market sales data, and consequently, to recalculate the dumping margin in accordance with that data.

*SKF*, 15 CIT at 161–62, 762 F. Supp. at 352 (emphasis added).

The Remand Determination contains conflicting assertions on this critical component of the case. On page two, Commerce conclusively

---

[4] This distinction did not compromise the ITA's decision to test viability based on the five classes or kinds of antifriction bearings. The Court merely found that within the ball bearing class, it was error to test the markets for sales of finished bearings and the markets for independent sales of ball bearing components in the same calculation where the ITA determined that such testing skewed the test results.

states that the"Department has reconsidered its determinations as to viability and has reaffirmed its finding that in the Swedish and Italian cases, the relevant home markets for finished SKF ball bearings were not viable." Yet on page six, the ITA defies that disposition when it explains that the"second test demonstrated that exclusion of parts from the test would send the results of the test well over the five percent benchmark, thereby rendering the home markets viable." Given the uncontested evidence that SKF's home markets for finished ball bearings (meaning *parts excluded*), in Sweden and Italy were viable, the Court finds that the statement on page two is an unsupported conclusion which is rebutted by subsequent findings in the determination.

The Court instructed the ITA to use home market data to calculate the foreign market value of SKF's finished ball bearings if the home markets for them were viable. Though the ITA found those markets viable, it failed to use the home market data in the less than fair value calculations. That decision was not in accordance with law. 19 U.S.C. § 1677b(a)(1); *U.H.F.C. Co. v. United States*, 916 F.2d 689, 692 (Fed. Cir. 1990). Accordingly, plaintiffs' motion to vacate is granted and the Remand Determination of the Department of Commerce, dated June 20, 1991, shall be vacated, except for its factual findings concerning the share of SKF's non-U.S. *finished* ball bearing sales represented by the Swedish and Italian markets. The ITA is instructed to use SRF's home market data from Sweden and Italy to determine foreign market value for finished ball bearings from those countries, and to test home market viability for ball bearing parts in a separate calculation. The ITA shall make further adjustments to the final determination, including the dumping margin, as necessary to comply with this opinion.