Patricia L. **KILLIP**, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
Respondent.

No. 91–3359.

United States Court of Appeals,
Federal Circuit.

April 14, 1993.

---

Patricia L. Killip, Phoenix, AZ, submitted pro se.

Ellen M. McElligott, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, submitted for respondent. Of counsel were James M. Kinsella, Asst. Director, David M. Cohen, Director, Dept. of Justice and Gail L. Goldberg, Office of General Counsel, Office of Personnel Management, Washington, DC.

Before PLAGER, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

CLEVENGER, Circuit Judge.

Patricia L. Killip petitions for review of the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. DE08469010425, that affirmed the decision of the Office of Personnel Management (OPM) denying her request to transfer from the Civil Service Retirement System (CSRS) to the Federal Employees' Retirement System (FERS). Because OPM lacked authority to entertain petitioner's request to transfer between the federal retirement systems, we affirm.

I

Congress enacted the Federal Employees' Retirement System Act of 1986, Pub.L. No. 99–335, 1986 U.S.C.C.A.N. (100 Stat.) 514 (FERSA) (codified as amended at 5 U.S.C. §§ 8401–8479 (1988)) on June 6, 1986, thereby creating FERS as an alternative to the retirement benefits program existing under CSRS. Section 301(a) of FERSA provided that federal employees subject to CSRS as of June 30, 1987 could elect to transfer from CSRS to FERS, but only if that election were made during the six-month statutory time period ("open season") from July 1, 1987 to December 31, 1987. FERSA § 301(a)(1)(B), 5 U.S.C. § 8331 note (1988); see 5 C.F.R. § 846.-201(a) (1992). Such application to transfer was to be made to the employing agency, with OPM having the authority to reconsider the employing agency's decision. 5 C.F.R. §§ 846.204(c), .205(a) (1992). OPM's decision could then be appealed to the MSPB. 5 C.F.R. § 846.205(e) (1992). To explain relevant details of FERS and the consequences of transferring from CSRS to FERS, OPM issued the "FERS Transfer Handbook" to all federal government employees before the onset of the open season.

A major factor considered by many federal employees in deciding whether to transfer from CSRS to FERS was the applicability of the Public Pension Offset (PPO) provisions of the Social Security Act. Under the PPO, "the amount of Social Security benefits that an individual may receive, based on the Social Security coverage of his or her spouse, is reduced if he or she receives a pension based on work performed for Federal, state or local government." *Moriarty v. Office of Personnel Management*, 47 M.S.P.R. 280, 282 (1991), *aff'd*, 989 F.2d 1202 (Fed.Cir.1993) (table). Under such offset, a federal employee who retired under CSRS and who was eligible to receive both retirement benefits and Social Security benefits as, for example, a spouse or surviving spouse, would receive such Social Security benefits in an amount reduced by two-thirds of the amount of the

retirement benefits payable based upon his/her earnings while in the federal government. 47 M.S.P.R. at 282; *see* 42 U.S.C. § 402(b)(4)(A), (c)(2)(A), (e)(7)(A), (f)(2)(A) & (g)(4)(A) (1988); *see generally Barnes v. Office of Personnel Management,* 980 F.2d 708, 709–11 (Fed.Cir.1992).

As FERSA was originally enacted, employees transferring from CSRS to FERS during the open season were exempt from the effect of the PPO upon Social Security benefits receivable as, for example, a spouse or surviving spouse of a federal employee, because FERS unlike CSRS includes Social Security coverage for federal employees. *See, e.g.,* 42 U.S.C. § 402(b)(4)(A) (Supp. IV 1986) & 42 U.S.C. § 410(a)(5)(H) (1988) (PPO does not apply to wife's benefits if, on the last day of her federal service, her "employment" was, *inter alia,* covered by FERS). Even at the time of FERSA's passage, however, Congress was considering certain legislative proposals that would have eliminated FERS' exemption from the PPO, thereby subjecting employees retiring under FERS to the offset. On October 29, 1987, as a result of such consideration, the House of Representatives passed legislation which would have completely eliminated the exemption from the PPO for all employees covered by FERS, including retroactively those who elected to transfer during the open season, unless a retiring employee had worked a minimum of five years while subject to FERS. H.R. 3545, 100th Cong., 1st Sess. § 9006 (1987); *see* 133 Cong.Rec. 30,058–59 (1987). On December 10, 1987, however, the Senate passed its version of the bill which contained no corresponding provision eliminating the exemption from the PPO from FERS. S. 1920, 100th Cong., 1st Sess. (1987). A conference between the Senate and the House was thus required. 133 Cong.Rec. 34,935 (1987); *see generally Webb v. Office of Personnel Management,* 47 M.S.P.R. 275, 279 n. 4 (1991).

The ultimate legislative compromise between the House and the Senate on the PPO issue resulted in passage of the Omnibus Budget Reconciliation Act of 1987 (OBRA), Pub.L. No. 100–203, § 9007, 1987

U.S.C.C.A.N. (101 Stat.) 1330, 1330–289, 42 U.S.C. § 402(b)(4), (c)(2), (e)(7), (f)(2) & (g)(4) (1988), on December 22, 1987, a scant nine days before the close of the open season. Under section 9007, the exemption from the PPO remained in effect for an employee who converted from CSRS to FERS during the specified six-month open season, *i.e.,* before January 1, 1988. For all other individuals subject to FERS, the exemption from the PPO applied only if the employee performed at least five years of service while subject to FERS before retirement, as in the original House proposal. *See* 133 Cong.Rec. 36,849–50, 36,996 (1987); H.R.Conf.Rep. No. 495, 100th Cong., 1st Sess. 803 (1987) (House Conference Rep.), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–1245, 2313–1548–49; *Webb,* 47 M.S.P.R. at 279 n. 4.

In OBRA, Congress recognized that express statutory provisions might permit employees to transfer from CSRS to FERS during election periods other than the original open season. Congress, however, provided that the exemption from the PPO would not apply to an employee who "elect[ed] to become subject to [FERS], ... *pursuant to law after* December 31, 1987," unless she qualifies for the exemption by having worked *five or more years* under FERS. OBRA § 9007(a)–(e), 42 U.S.C. § 402(b)(4)(A)(ii)(II), (c)(2)(A)(ii)(II), (e)(7)(A)(ii)(II), (f)(2)(A)(ii)(II) & (g)(4)(A)(ii)(II) (1988) (emphasis added). Congress interpreted this language to require the five-year criterion to

> be effective with respect to employees who elect to become covered under FERS during any election period which may occur on or after January 1, 1988.

House Conference Rep. at 803, *reprinted in* 1987 U.S.C.C.A.N. at 2313–1549. Originally as part of FERSA, Congress apparently provided at least two such election periods pursuant to "law" permitting an election to transfer after December 31, 1987 by extending the time period for election for a narrowly defined class of individuals. *See* FERSA § 301(a)(2), 5 U.S.C. § 8331 note (1988) (an individual who is "reemployed" by the federal government

subsequent to June 30, 1987, and who is then subject to CSRS, has six months from the date of reemployment in which to elect to transfer to FERS); FERSA § 301(d)(1), (d)(4)(A), 5 U.S.C. § 8331 note (1988) (extension of time period in which to elect permitted when (i) request for extension made during original open season and (ii) extension needed to secure, *inter alia*, a modification of a divorce decree, in order to procure consent to FERS election from former spouse). Congress has also provided for other such election periods in subsequent legislation. *See, e.g.*, Intelligence Authorization Act for Fiscal Year 1993, Pub.L. No. 102–496, § 802 (sub–§ 301(d)), 1992 U.S.C.C.A.N. (106 Stat.) 3180, 3196, 3243 (1992) (person designated to participate in Central Intelligence Agency Retirement & Disability System after December 31, 1987 has six months to transfer to FERS from date of designation); National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484, § 1062, 1992 U.S.C.C.A.N. (106 Stat.) 2315, 2504–05 (1992) (Judges of Court of Military Appeals have the same rights under FERS as "reemployed" individuals, FERSA § 301(a)(2), and have the right to transfer to FERS within 30 days of enactment of this act).

In early 1988, acting only pursuant to its general regulatory authority, FERSA § 101(a), 5 U.S.C. § 8461(b)[1], (g)[2] (1988), and without specific statutory authority, OPM promulgated a regulation allowing belated elections to transfer to FERS, after the open season, for employees satisfying the regulation's criteria:

(a) *Belated elections.* On determination by an employing office that the FERS transfer handbook issued by OPM was not available to an individual in a timely manner or an individual was unable, for cause beyond his or her control, to elect FERS coverage within the prescribed time limit, the employing office may, within 6 months after expiration of the individual's opportunity to elect FERS coverage under [5 C.F.R.] § 846.201, accept the individual's election of FERS coverage.

(b) *Correction of administrative errors related to election.* During the 6–month period after the expiration of an individual's opportunity to elect FERS coverage under § 846.201, the employing office may make prospective corrections of administrative errors regarding an individual's opportunity to elect FERS coverage, including failure to provide the election form ... to an individual.

5 C.F.R. § 846.204(a), (b) (1992); *see* 52 Fed.Reg. 19,231, 19,236 (May 21, 1987). On November 10, 1988, Congress enacted the Technical & Miscellaneous Revenue Act of 1988 (TMRA), Pub.L. No. 100–647, 1988 U.S.C.C.A.N. (102 Stat.) 3342. In that Act, Congress recognized the existence of OPM's belated election regulation—and its six-month time period—by providing, with respect to employees whose federal employment terminated after electing FERS but before the effective date of election, that the exemption from the PPO would apply, *inter alia*, "if ... such person[s] made ... an election on or after January 1, 1988, and before July 1, 1988, pursuant to regulations of [OPM] relating to belated elections and correction of administrative errors (5 C.F.R. § 846.204)...." TMRA § 8014(b), 1988 U.S.C.C.A.N. (102 Stat.) at 3790, 42 U.S.C. § 402 note (1988).

Although Congress' acknowledgement of the existence of OPM's six-month belated election period may indicate approval of the regulation's promulgation, that recognition certainly evidenced congressional awareness of the extent to which the PPO issue had impacted decisions regarding whether to transfer to FERS. Congress did not act to establish another statutory open season, however, nor did it explicitly authorize OPM to extend perpetually the election period created by its now-expired regulation. OPM has not promulgated any other regu-

---

**1.** Section 8461(b) reads, in pertinent part: "[OPM] shall administer all provisions of [chapter 84—FERS] not specifically required to be administered by ... any other officer or agency."

**2.** Section 8461(g) reads: "[OPM] may prescribe regulations to carry out the provisions of this chapter administered by [OPM]."

lations on the subject, and Congress has not since provided for any other extensions of time during which to transfer. Indeed, although Congress has been faced with several proposed bills to create a second six-month open season to permit individuals who were federally employed as of June 30, 1987, and who did not transfer to FERS during the original open season, to elect to so transfer, none has been enacted. *See* H.R. 2538, 101st Cong., 1st Sess. (1989) (introduced by Rep. Parris (R–Va) on June 1, 1989, at 135 Cong.Rec. 10,502, 10,733 (1989)); S. 1108, 101st Cong., 1st Sess. (1989) (introduced by Sen. Stevens (R–Ak) on June 1, 1989, at 135 Cong. Rec. 10,664–65 (1989)); H.R. 4070, 100th Cong., 2d Sess. (1988) (introduced by Rep. Parris on Mar. 2, 1988, at 134 Cong.Rec. 2996, 3009 (1988)); *see also* 134 Cong.Rec. 1570 (1988) (remarks of Sen. DeConcini (D–Az)).

## II

Ms. Killip first filed a request with her employing agency, the Phoenix, Arizona office of the Internal Revenue Service (IRS),[3] to transfer retroactively from CSRS to FERS on March 30, 1990, long after the expiration of both the open season and the six-month extension contained in 5 C.F.R. § 846.204. The IRS denied her transfer request on April 30, 1990, a decision which was affirmed on reconsideration by OPM on June 25, 1990. Ms. Killip then appealed to the Board.

On November 2, 1990, the Administrative Judge (AJ) issued his initial decision affirming OPM on several grounds. The AJ determined that after the six-month extension period of 5 C.F.R. § 846.204(a), only OPM can authorize a transfer, and does so only if the individual is able to demonstrate that she was unable to elect FERS coverage under the "cause beyond [her] control" standard, the same articulation of the standard in 5 C.F.R. § 846.204(a) that was used to judge a belated election during the long-expired six-month extension period of OPM's regulation. No authority was cited

by either OPM or the Board, however, permitting OPM to employ this standard for elections made after the expiration of the extension period, nor for OPM's ability even to entertain such elections. Nevertheless, applying this standard, the AJ concluded that Ms. Killip had been sufficiently informed of Congress' contemplated actions that she could not meet the required standard. The AJ also ruled that OPM was not estopped from denying the election, citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424–34, 110 S.Ct. 2465, 2471–76, 110 L.Ed.2d 387 (1990).

The Board accepted Ms. Killip's petition for review, and affirmed the AJ's initial decision on May 1, 1991. Citing *Moriarty*, 47 M.S.P.R. 280, and *Webb*, 47 M.S.P.R. 275, the Board determined that Ms. Killip was not entitled to make a belated transfer to FERS. The Board, however, did not consider whether OPM had authority to entertain Ms. Killip's much belated election to transfer. Ms. Killip timely appealed to this court for review of the MSPB's decision.

## III

 We review the Board's decision under a narrow standard and must affirm unless the decision is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Generally, a reviewing court may judge the propriety of an agency's decision only on the grounds "upon which the record discloses that its action was based." *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (*Chenery I*); *see U.H.F.C. Co. v. United States*, 916 F.2d 689, 700 (Fed.Cir. 1990). We may, however, where appropriate, affirm the Board on grounds other than those relied upon in rendering its deci-

---

**3.** Ms. Killip was employed with the same agency during all times relevant to this case, and was not "reemployed" by the federal government for purposes of FERSA § 301(a)(2), 5 U.S.C. § 8331 note (1988), discussed *supra*.

sion, when upholding the Board's decision does not depend upon making a determination of fact not previously made by the Board. *See Chenery I,* 318 U.S. at 88, 63 S.Ct. at 459; *see, e.g., Williams v. United States Postal Serv.,* 967 F.2d 577, 578–79 (Fed.Cir.1992) (affirming on alternative grounds—interpreting statute to bar petition for review); *Buriani v. Department of Air Force,* 777 F.2d 674, 677 (Fed.Cir. 1985) (affirming on different grounds—interpreting regulation to preclude potential reliance on argued defense); *Spears v. Merit Sys. Protection Bd.,* 766 F.2d 520, 523 (Fed.Cir.1985) (affirming on alternative legal grounds—remand unnecessary under *Chenery I* ). Furthermore, courts are free to review the interpretation of the federal statute authorizing an agency to act. *Social Sec. Bd. v. Nierotko,* 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946) (it is a "judicial function," and not that of an agency, to decide as final the limits of the agency's statutory powers); *Railway Labor Executives' Ass'n v. Interstate Commerce Comm'n,* 784 F.2d 959, 969 (9th Cir.1986). In this case, we conclude that OPM did not have authority to consider Ms. Killip's election.

■■ An agency is but a creature of statute. Any and all authority pursuant to which an agency may act ultimately must be grounded in an express grant from Congress. *See Lyng v. Payne,* 476 U.S. 926, 937, 106 S.Ct. 2333, 2340, 90 L.Ed.2d 921 (1986); *Sealed Air Corp. v. United States Int'l Trade Comm'n,* 645 F.2d 976, 993 (CCPA 1981) ("Any authority delegated or granted to an administrative agency is necessarily limited to the terms of the delegating statute."); *see also Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1117 (6th Cir. 1984) (administrative agencies are vested only with the authority given to them by Congress), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Atchison, Topeka & Santa Fe Ry. Co. v. Interstate Commerce Comm'n,* 607 F.2d 1199, 1203 (7th Cir.1979) (same). Though an agency may promulgate rules or regulations pursuant to authority granted by Congress, no such rule or regulation can confer on the agency any greater authority

than that conferred under the governing statute. *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976); *see also Office of Consumers' Counsel v. Federal Energy Regulatory Comm'n,* 655 F.2d 1132, 1149 n. 32 (D.C.Cir.1980).

■ In light of these principles of administrative law, the FERSA delegated to OPM the authority to oversee the implementation of FERS. 5 U.S.C. § 8461(b) (1988). Section 8461(b), however, does not authorize OPM to act beyond the scope of FERSA itself. Furthermore, though 5 U.S.C. § 8461(g) grants OPM the authority to promulgate regulations to administer FERS, OPM has not attempted to promulgate such a regulation to govern its consideration of late elections to transfer beyond June 30, 1988.

The only "authority" of which we are aware, for OPM to consider Ms. Killip's late election to transfer, is a single statement in the text of the Federal Personnel Manual (FPM):

> In some cases, agencies must make negative decisions because they do not have the authority to approve such requests. For example, requests to transfer that are received more than 1 year after the FERS election opportunity began, or a request for a retroactive effective date. OPM has the authority to approve such requests; agencies do not.

CSRS & FERS Handbook for Personnel & Payroll Offices, FPM Supp. 830–1, § 11A6.1–1(B) (Oct. 31, 1990). This language was promulgated pursuant to neither the Administrative Procedure Act (APA), 5 U.S.C. §§ 552, 553 (1988), nor the statutory authority of 5 U.S.C. § 8461(g), and thus cannot constitute a "legislative" rule. *Chrysler Corp. v. Brown,* 441 U.S. 281, 301–04, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979) (a rule's promulgation "must conform with any procedural requirements imposed by Congress." (citing *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974))); *see*

Robert A. Anthony, *Interpretive Rules, Policy Statements, Guidances, Manuals, and the Like—Should Federal Agencies Use Them to Bind the Public?*, 41 Duke L.J. 1311, 1322–23 (1992) (discussing the legal requirements for a rule to qualify as "legislative"); *compare* 52 Fed.Reg. at 19,-232–39 (rules concerning FERS formally promulgated by OPM pursuant to APA). Thus, the Federal Personnel Manual provision, even if "interpretive" of FERSA, lacks the "force and effect of law." *Chrysler Corp.*, 441 U.S. at 301, 99 S.Ct. at 1717; *see also Horner v. Jeffrey*, 823 F.2d 1521, 1528–31 (Fed.Cir.1987) (discussing, *inter alia,* the "policy" and "interpretive" nature of FPM provisions).

Through section 301(a) of FERSA, Congress explicitly authorized individuals to transfer within the narrowly defined open season: "An election [to transfer to FERS] *may not be made* ... after December 31, 1987." (emphasis added). Even though Congress recognized that certain transfers "may occur" post-December 31, 1987 "pursuant to law," OBRA § 9007, discussed *supra,* Congress did not provide for indiscriminate consideration of elections to transfer from CSRS to FERS outside of the carefully defined open season, and such action may not be taken during OPM's apparently perpetual *ad hoc* elections period as interpretive of FERSA when an employee's ability to elect to transfer was clearly circumscribed by the original act. No law authorizes OPM's action in this case. Such action by an administrative agency violates the principle that an agency is strictly limited by the authority granted by Congress, and therefore can have no effect. *City of Santa Clara v. Andrus*, 572 F.2d 660, 677 (9th Cir.1978) (citing *Utah Power & Light Co. v. United States*, 243 U.S. 389, 410, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917)), *cert. denied sub nom. Pacific Gas & Elec. Co. v. City of Santa Clara*, 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978); *see also United States v. Amdahl Corp.*, 786 F.2d 387, 392–93 (Fed.Cir.1986). The quoted language in the FPM, therefore, cannot constitute a basis for validating OPM's action.

Since the congressional legislation and the applicable OPM regulation at most only grant OPM authority either to address elections to transfer from CSRS to FERS made before July 1, 1988, or to reconsider an agency's decision on the matter, OPM is without authority to entertain any elections made after that date. "[A]ppropriate respect for legislative authority requires regulatory agencies to refrain from the temptation to stretch their jurisdiction to decide questions of competing public priorities whose resolution properly lies with Congress." *Federal Energy Regulatory Comm'n*, 655 F.2d at 1152. The lack of authority constitutes a time-bar to OPM entertaining any elections made after June 30, 1988. OPM must refrain from such consideration.

Since we conclude that OPM is without authority to consider the present suit, we affirm the MSPB's decision that Ms. Killip not be permitted to transfer to FERS.

No costs.

AFFIRMED.