11 F.3d 1071
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Delores L. CAIN, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 93-3272.
 United States Court of Appeals, Federal Circuit.
 Oct. 21, 1993.
 
 Before ARCHER, Circuit Judge, SMITH, Senior Circuit Judge and MAYER, Circuit Judge.
 EDWARD S. SMITH, Senior Circuit Judge.
 
 
 1
 Delores L. Cain petitions for review of the decision of the Merit Systems Protection Board (MSPB), Docket No. DA-0831-92-0534-I-1, which denied her petition for review of the MSPB's initial decision affirming the decision of the Office of Personnel Management (OPM) that denied her request to transfer from the Civil Service Retirement System (CSRS) to the Federal Employees' Retirement System (FERS). The MSPB denied petitioner's request for review because it did not meet the criteria as provided in 5 C.F.R. Sec. 1201.115 (1993). Finding our recent decision in Killip v. Office of Personnel Management, 991 F.2d 1564 (Fed.Cir.1993) to be dispositive in this case, we affirm on an alternative ground.
 
 Background[1]
 
 2
 Congress enacted the Federal Employees' Retirement Systems Act (FERSA) in 1986, thereby creating FERS as an alternative to the retirement benefits program existing under CSRS. FERSA allowed federal employees subject to CSRS to elect to transfer to FERS provided that the election was made during the six-month statutory time period ("open season") from 1 July 1987 to 31 December 1987. Elections to transfer were submitted to the employing agency, and OPM was authorized to reconsider the employing agency's decision. OPM's decisions were appealable to the MSPB.
 
 
 3
 Two provisions within FERSA as initially enacted that especially impacted federal employees' decisions regarding the advisability of transferring to FERS were the exemption from the effect of the Public Pension Offset (PPO) provisions of the Social Security Act and the offset in disability annuity benefits beginning at age 62 ("disability retirement gap"). The PPO provided that a federal employee, who retired and was entitled to benefits under CSRS and who was also eligible to receive Social Security benefits as, for example, a surviving spouse, would have her Social Security benefits reduced by an amount dependent on the level of CSRS benefits. Under FERSA as initially enacted, federal employees who elected to transfer to FERS during the open season were exempted from the effect of the PPO upon any spouse's or surviving spouse's Social Security benefits because FERS election subjected the federal employee to Social Security withholding. Immediately after FERSA's enactment, Congress began considering legislative proposals that would have eliminated the PPO exemption for FERS participants. The uncertainty created by such considerations prompted many CSRS participants to defer their decisions regarding FERS election to the end of the open season in hopes that Congress would make its final intentions known concerning the PPO exemption, which it did by enacting the Omnibus Budget Reconciliation Act of 1987 (OBRA) on 22 December 1987, only nine days before the close of the open season. OBRA provided for the PPO exemption to remain in effect for employees who converted from CSRS to FERS before 1 January 1988. For all others subject to FERS, the PPO exemption applied only if the employee performed at least five years of service while subject to Social Security withholding under FERS.
 
 
 4
 In early 1988, acting pursuant only to its general statutory authority under FERSA and without specific statutory authority, OPM promulgated a regulation that allowed employing agencies to process elections to transfer to FERS that were submitted after expiration of the open season, provided that the employing agency determined that the affected employee was unable to elect FERS coverage during the open season for reasons beyond her control and provided that the belated election was made before 1 July 1988. Subsequently, Congress manifested legislative recognition of the OPM regulation by enacting the Technical & Miscellaneous Revenue Act of 1988 on 10 November 1988. However, Congress did not statutorily provide for any other open season periods nor did it grant OPM the power to perpetually extend the election period created by OPM's regulation. Essentially, OPM's power to entertain elections to transfer to FERS ceased on 1 July 1988.
 
 
 5
 As initially enacted FERSA provided for an offset in disability annuity benefits at age 62 under the assumption that Social Security benefits would make up the difference. This provision created a disability retirement gap that adversely affected disability retirement benefit recipients who did not have sufficient quarters of Social Security withholding to generally qualify for benefits under that system or whose disability was not specifically recognized as such for purposes of receiving Social Security benefits. On 8 January 1988, Congress enacted technical corrections to FERSA that closed the disability retirement gap by insuring that any disability annuity offset was based upon an actual Social Security disability insurance benefit.
 
 Facts
 
 6
 Petitioner was an employee of the Federal Aviation Administration (FAA) and was covered by CSRS at the time that the FERS option became available. Petitioner did not elect to transfer to FERS during either the statutory open season or the six-month extension provided by OPM regulation. On 23 July 1987, during the statutory open season, petitioner executed a FERS "Election of Coverage" form on which she indicated her desire not to elect FERS coverage. This form referred petitioner to the FERS Transfer Handbook, which contained information explaining the effects of a disability retirement under FERS and the impact of FERS on the PPO. Petitioner consulted the handbook prior to making her decision not to transfer to FERS.
 
 
 7
 On 21 February 1992, almost four years after expiration of the six-month extension on 30 June 1988, petitioner requested to transfer to FERS by submitting an executed "Election of Coverage" form to the FAA. The FAA denied the request explaining that agencies were not authorized to grant FERS transfers after 30 June 1988. Petitioner requested reconsideration from OPM which denied her request to transfer to FERS on 9 June 1992. OPM explained that FERS transfers after 30 June 1988 could be authorized only by OPM and only when it determined that the employee had not made a timely election for reasons beyond the employee's control. OPM further stated that petitioner's failure to timely elect FERS coverage was not for reasons beyond her control but, rather, resulted from her failure to act diligently in taking the necessary steps to insure an informed transfer decision. Petitioner appealed OPM's decision to the MSPB on 30 June 1992 alleging that inadequate information regarding the disposition of the disability retirement gap constituted a cause beyond her control that precluded a timely FERS election. The MSPB's initial decision of 23 October 1992 affirmed OPM and found that petitioner failed to show that she was eligible to make a belated transfer to FERS under the policy criteria established by OPM for belated elections. On 25 November 1992, petitioner requested the MSPB to review its initial decision. The MSPB denied petitioner's request for review on 22 February 1993, stating that it did not meet the criteria for review stipulated in 5 C.F.R. Sec. 1201.115 (1993), and adopted its initial decision as final. This appeal followed.
 
 Timeliness of Election
 
 8
 Appellate review of a MSPB decision is narrowly defined by statute. The decision must be affirmed unless it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988). Generally, a reviewing court may judge the propriety of an agency's decision only on the grounds "upon which the record discloses that its action was based." Securities & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (Chenery I ); see U.H.F.C. Co. v. United States, 916 F.2d 689, 700 (Fed.Cir.1990). However, we may affirm a MSPB decision on grounds other than those relied upon by the MSPB in rendering its decision when sustaining the decision does not require us to make factual determinations not previously made by the MSPB. See Chenery I, 318 U.S. at 88; Williams v. United States Postal Serv., 967 F.2d 577, 578-79 (Fed.Cir.1992) (affirming on alternate grounds--the MSPB lacked jurisdiction to further review its final decision). Finally, courts may review the interpretation of the organic statute authorizing a federal agency to act. Social Sec. Bd. v. Nierotko, 327 U.S. 358, 369 (1946) (the judiciary--not the agency--determines the limits of the agency's statutory powers).
 
 
 9
 In Killip v. Office of Personnel Management, 991 F.2d 1564 (Fed.Cir.1993), which was decided on 14 April 1993, we considered an appeal from a final decision of the MSPB similar to the appeal now before us. In Killip the petitioner, an employee of the Internal Revenue Service (IRS), elected to transfer to FERS on 30 March 1990, almost two years after the 30 June 1988 deadline established by OPM regulation. Id. at 1568. The IRS denied her transfer request, OPM affirmed on reconsideration, and Killip appealed to the MSPB. In rendering MSPB's initial decision, an administrative judge (AJ) affirmed OPM and concluded that, after 30 June 1988, only OPM could authorize a transfer to FERS and that Killip had not demonstrated that her choice not to elect FERS was for a reason beyond her control. In affirming the AJ's decision, the MSPB rendered its final decision and determined that Killip was not entitled to make a belated transfer to FERS. Whether OPM was statutorily empowered to entertain Killip's tardy transfer request was never addressed to this point in the appeals process. Id. Killip appealed to this court, and we affirmed the MSPB on an alternative ground and without reaching the merits of Killip's claim. Id. at 1568-70. After a discussion of administrative law principles, we concluded that "no law authorizes OPM's [reconsideration] action in this case" and, consequently, that "[this] lack of authority constitutes a time-bar to OPM entertaining any elections made after June 30, 1988." Id. at 1570.
 
 
 10
 In keeping with our holding in Killip and mindful of petitioner's election to transfer to FERS after the period allowed by statute, we affirm the MSPB, without reaching the merits of petitioner's claim, on the alternative ground that OPM was not statutorily empowered to entertain petitioner's request of 21 February 1992 to elect FERS coverage.
 
 
 
 [1]
 For a detailed discussion of the Federal Employees' Retirement System Act of 1986 (FERSA) and its impact on federal employees' retirement benefits, see Killip v. Office of Personnel Management, 991 F.2d 1564, 1565-68 (Fed.Cir.1993)