# United States Court of Appeals for the Federal Circuit

04-3260

WILLIAM F. JOHNSTON,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

William F. Johnston, of Seaford, Delaware, pro se.

John H. Williamson, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and William F. Ryan, Assistant Director. Of counsel on the brief was Jill Gerstenfeld, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3260

WILLIAM F. JOHNSTON,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  June 28, 2005

_____

Before NEWMAN, CLEVENGER, and BRYSON, <u>Circuit Judges</u>.

NEWMAN, <u>Circuit Judge</u>.

William F. Johnston petitions for review of the decision of the Merit Systems Protection Board, Docket No. PH831E030308-I-1, affirming the Office of Personnel Management's dismissal of his application for disability retirement benefits under the Civil Service Retirement System ("CSRS").  We vacate the dismissal, and remand for further proceedings.

BACKGROUND

Mr. Johnston was injured in February of 1983 during employment by the Army Corps of Engineers. He was awarded Office of Workers' Compensation Programs benefits for total disability. On December 12, 1989 the Army wrote to him, asking for medical documentation of his current condition and when he would be able to return to work. The letter stated that normally a decision is made, after a year of absence due to injury, as to whether the employee will be able to return to work, and "[i]f the decision is unfavorable to the employee, he/she can apply for a disability retirement from the Office of Personnel Management (OPM). Once the disability retirement is approved, the employee can elect the better benefit, i.e., continuing the Office of Worker's Compensation Programs (OWCP) benefit or the OPM retirement."

Mr. Johnston states that no unfavorable decision was communicated to him. He made no application for disability retirement, made no election, and continued to receive OWCP benefits. On April 1, 2003 the OPM wrote to Mr. Johnston, informing him that he was entitled to a deferred retirement annuity because he had reached age 62. He was then age 66. He then filed, in early May 2003, an application for disability retirement benefits. He acknowledged that the application was "many years late," but stated that the agency "never informed or notified me to file Standard form 3112 or any other type of form for retirement." The OPM denied the application as untimely, citing the one-year limit of 5 U.S.C. §8337(b), measured by OPM from March 1, 1991. The MSPB affirmed the OPM's decision.

The record of this appeal includes a copy of a SF-50 form provided by OPM to the MSPB during this litigation. The SF-50 terminated Mr. Johnston's employment status on

March 1, 1991. Mr. Johnston states that he never received this SF-50, or any other notice of formal termination of his employment. There was no evidence that the SF-50 had been sent, or that Mr. Johnston was advised of the change of his status. Mr. Johnston states that he learned of his "options or rights" in April 2003, upon OPM's tardy notification of his entitlement to a deferred annuity. OPM held that the time for filing the application for disability retirement expired one year after March 1, 1991.

## DISCUSSION

The statute governing disability retirement provides that benefits may be granted "only if the application is filed with the Office before the employee . . . is separated from the service or within 1 year thereafter." 5 U.S.C. §8337(b).

Statute and regulation require written notice of proposed separation from employment:

> 5 U.S.C. §7513(b). An employee against whom an action is proposed is entitled to --
>
> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action . . . .

The agency is required to issue a decision to remove an employee for medical reasons, including advising the employee in writing of possible eligibility for disability retirement:

> 5 C.F.R. §831.1205(b)(1). When an agency issues a decision to remove an employee . . . but the removal is based on reasons apparently caused by a medical condition, the agency must advise the employee in writing of his or her possible eligibility for disability retirement.

Mr. Johnston states that the agency failed to notify him of his changed status, his retirement options, and the time limits. He argues that the one-year deadline did not arise

in 1991 in view of these errors and omissions by the agency. He states that, whether on a theory of estoppel, waiver, or equitable tolling, he should not be prejudiced by the agency's failure to comply with its own regulations and advise him of the change in his official employment.

Precedent supports Mr. Johnston's position. Waiver may lie against the agency when procedural error, in contravention of the agency's established duties, results in derogation of the employee's rights. See Simpson v. Office of Pers. Mgmt., 347 F.3d 1361 (Fed. Cir. 2003) (when OPM did not provide statutorily mandated notice of election rights, the employee's failure to meet a statutory deadline may be excused); Wood v. Office of Pers. Mgmt., 241 F.3d 1364 (Fed. Cir. 2001) (when OPM sends a confusing letter regarding election rights, it is not enough for it to later send a compliant notice, if that notice does not correct the earlier confusion).

OPM bears the burden of showing that the requisite notice was sent. Brush v. Office of Pers. Mgmt., 982 F.2d 1554, 1561 (Fed. Cir. 1992) (to prove that it has met its burden of providing notice, OPM must show that "notice was actually sent" and "offer proof as to the contents" of the notice). Failure to provide notice of a filing deadline may excuse an employee's failure to meet timing provisions that depend on such notice. See Casey v. Merit Sys. Prot. Bd., 748 F.2d 685, 686 (Fed. Cir. 1984) (the agency provided tardy notice under 5 U.S.C. §7513(b), and the employee's filing was timely when measured from the date of actual notice).

The Board ignored the burden on OPM to show that notice was given, and invoked Office of Personnel Management v. Richmond, 496 U.S. 414 (1990) for its holding that a claimant who relied on erroneous advice from a federal employee could not thereby estop

the government from denying his claim. That is a misreading of Richmond, for the Court did not absolve the federal government of the consequences of agency error, but held that the agency is not estopped from reaching the correct result, even when an agency representative gave incorrect information to an employee. In Richmond the claimant sought to rely on an agency's erroneous advice that he was entitled to a certain annuity payment, although he was not in fact so entitled and the agency's advice was "in direct contravention of the federal statute upon which" his claim rested. Thus the Court held that the agency was not estopped, by its employee's error, from determining the correct annuity to be paid. 496 U.S. at 424. In contrast, Mr. Johnston states that he received no notice or advice, contrary to regulation, although he may in fact have been entitled to disability benefits. Richmond does not excuse an agency's violation of its duty, or apply an agency's error in order to deny an employee's just entitlement.

Statute and regulation embody the congressional intent that federal employees be informed of their rights and entitlements, implementing the federal employer's affirmative duty to "protect an employee's rights." Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1470 (Fed. Cir. 1998) (interpreting 5 C.F.R. §844.202(a)). The one-year time period set in 5 U.S.C. §8337(b) arises with the agency's notification to the employee that he has been terminated for medical reasons. The time period for response is measured by the date of actual notice. See Casey, 748 F.2d at 686 (measuring the timing of response from the date of the tardy notice). The agency cannot invoke a deadline that passed before notice was given.

OPM argues that its December 12, 1989 letter requesting medical documentation, quoted supra, was the requisite statutory notice. However, that letter contained no

determination that Mr. Johnston was deemed medically unable to return to work. The letter requested information for the purpose of ascertaining when and if Mr. Johnston could return to work. It was not a notice of termination, and contained no information or procedures for applying for disability retirement. As held in Wood, 241 F.3d at 1367, inadequate or confusing notice does not satisfy the duty of notice of substantive rights. The burden is on OPM to establish that it complied with the statutory and regulatory requirements of notice. Brush, 982 F.2d at 1561.

OPM relies on Deerinwater v. Office of Personnel Management, 78 F.3d 570, 573 (Fed. Cir. 1996) and Killip v. Office of Personnel Management, 991 F.2d 1564, 1570 (Fed. Cir. 1993). Neither of these cases involved a contravention or omission of OPM's statutory and regulatory duties. In Deerinwater the employee relied on incorrect advice from an agency representative that an application for disability retirement would be timely if received by the employing agency within one year, whereas the statute and regulation require receipt by OPM within one year; this court rejected the employee's argument that the regulation was confusing and misleading, characterizing the argument as a "smokescreen" and an attempt "to make an end run around Richmond." Deerinwater, 78 F.3d at 573. There was no issue in Deerinwater of whether a statutory notice had been given.

In Killip the question was whether OPM had the authority to allow an election to transfer from the Civil Service Retirement System to the Federal Employee Retirement System, where the statute required that such election be made by June 30, 1988. Killip, 991 F.2d at 1568-70. The court held that OPM "lacked the authority" to consider elections made "outside of the carefully defined open season." Id. at 1570. In neither Deerinwater

nor <u>Killip</u> was there an allegation that the agency failed to give any notice required by law, and no statutory time period measured by the date of giving such notice.

In contrast, Mr. Johnston's situation is analogous to that of the employee in <u>Brush</u>, 982 F.2d 1554, whose former spouse was relieved of her failure to meet a deadline to elect a survivor annuity, because the agency had not met its obligation to provide notice of this election right. Similar agency obligation is present here, for statute and regulation require that the disabled employee be notified of his rights and filing deadlines.

Mr. Johnston states that he did not receive the requisite notice stating that his employment had been formally terminated and advising him of his options, and that he was not aware of his possible entitlement until he received OPM's letter of April 1, 2003. The Board stated that it need not consider the credibility of Mr. Johnston's testimony, and made no findings as to whether or when OPM sent or Mr. Johnston received the requisite notice. As we have discussed, the Board erred in holding that it was irrelevant whether such notice had been sent and received. We vacate the decision of the Board, and remand for determination of whether such notice was in fact given. In the event that OPM does not meet its burden of establishing earlier notice, the filing deadline is appropriately measured from the April 1, 2003 letter from OPM to Mr. Johnston.

<u>VACATED AND REMANDED</u>