Newman, Circuit Judge,
dissenting.
An important threshold issue before the court is whether the United States-and its agency the United States Postal Service are within the definition of “person” in § 18(a)(1)(B) of the America Invents Act, and thus entitled to proceed under that Act. The panel majority states that the appellant waived the issue because it was not raised in its opening brief. Maj. Op. at 1364-65. However, matters of jurisdiction are not subject to disposition by waiver.
My colleagues hold that the question of whether the government is a “person” subject to the AIA was waived by the parties’ failure to object. Although some issues may be waived, statutory jurisdiction is not subject to waiver. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (“Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.”); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (“subject-matter delineations must be policed by the courts on their own initiative even at the highest level.”); United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (“subject-matter jurisdiction ... can never be forfeited or waived.”).
My colleagues do not impart precision to their holding (or not) of waiver; rather, they “observe” that they would probably find waiver since the issue is not clearly within the “Article III context.” Maj. Op. 1365 n.15. However, considerations of subject matter jurisdiction are foundational to the tribunal’s power. “It is well settled that no action of the parties can confer subject-matter jurisdiction on a tribunal and that the principles of estoppel do not apply to vest subject-matter jurisdiction where Congress has not done so.” Dunklebarger v. Merit Sys. Prot. Bd., 130 F.3d 1476, 1480 (Fed. Cir. 1997) (citing Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). The issue of whether the PTAB possesses the power to adjudicate a claim of invalidity involves subject matter jurisdiction,' for the dispute must be within the limited scope granted by the Congress to the PTAB.
This court has an independent obligation to ascertain its own jurisdiction and that of the tribunal below. See Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934) (“An appellate federal court must satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.”). Although the foregoing concerns a court’s review of a lower court’s jurisdiction, the same principle applies to review of an agency’s jurisdiction. See, e.g., Da Cruz v. INS, 4 F.3d 721, 722 (9th Cir. 1993) (considering, sua sponte, whether the BIA lacked jurisdiction). This inquiry cannot be waived. It is a “judicial function,”.and not that of an agency, to decide the limits of the agency’s statutory powers. Social Sec. Bd. v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718 (1946).
“An agency is but a creature of statute. Any and all authority pursuant to which an agency may act ultimately must be *1372 grounded in an express grant from Congress.” Killip v. Office of Pers. Mgmt., 991 F.2d 1564, 1569 (Fed. Cir. 1993). See also Sealed Air Corp. v. United States Int'l Trade Comm’n, 645 F.2d 976, 993 (CCPA 1981) (“Any authority delegated or granted to an administrative agency is necessarily limited to the terms of the delegating statute.”); Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1117 (6th Cir. 1984) (administrative agencies are vested only with the authority given to them by Congress); Atchison, Topeka & Santa Fe Ry. Co. v. Interstate Commerce Comm’n, 607 F.2d 1199, 1203 (7th Cir. 1979) (same). “Though an agency may promulgate rules or regulations pursuant to authority granted by Congress, no such rule or regulation can confer on the agency any greater authority than that conferred under the governing statute.” Killip, 991 F.2d at 1569 (citing Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).
The AIA states that a “person” can file a CBM petition in the PTO, and if the decision is adverse, that person is bound by the decision in any future litigation. The nature of the “person” is a factor in statutory jurisdiction. See, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (“[Tjhere was in this case complete diversity, and therefore federal subject-matter jurisdiction, at the time of trial and judgment.”); United States v. Testan, 424 U.S. 392, 397, 393, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (“the measure of the Court of Claims’ statutory jurisdiction” “presents a substantial issue concerning the jurisdiction of the Court of Claims and the relief available in that tribunal.”). It is our obligation to assure ourselves of the propriety of the PTAB’s exercise of statutory authority. Such obligation cannot be waived.
The general statutory definition is that a “person” does not include the United States and its agencies unless expressly provided. It is at least as reasonable to assume that Congress, and those seeking the improvements provided by the America Invents Act, knew that “person” did not include the United States, lest additional complexities appear in the path of enactment of the America Invents Act.
The legislative record does not explore these potential complexities, but neither is there any suggestion that the standard rule of exclusion of the United States from the definition of “person” was simply legislative inadvertence, as my colleagues appear to believe. The Congress cannot be deemed innocent of knowing that the government can indeed be sued for infringement, but only in the Court of Federal Claims; yet that court is conspicuously absent from the designation of tribunals subject to the America Invents Act. See, e.g., 35 U.S.C. §§ 315(e), 325(e), and AIA § 18(a)(1)(D) (stating provisions applicable to the PTO, the district courts, and the ITC).
The Covered Business Method statute states that “[a] person may not file a petition for [CBM review] unless the person or the person’s real party in interest or privy has been sued for infringement of the patent or has been charged with infringement under that patent.” AIA § 18(a)(1)(B) (emphases added). The Dictionary Act, 1 U.S.C. § 1, defines “person”:
In determining the meaning of any Act of Congress, unless the context indicates otherwise—... the word ‘person’ ... include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.
The government is conspicuously absent from this definition, which pervades the legislative context, and from time to time receives judicial reinforcement. See, e.g., *1373 United States v. United Mine Workers of Am., 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947):
In common usage the term [“person”] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so. Congress made express provision, [] 1 U.S.C. § 1, for the term to extend to partnerships and corporations, and in § 13 of the Act itself for it to extend to associations. The absence of any comparable provision extending the term to sovereign governments implies that Congress did not desire the term to extend to them.
Id. at 275, 67 S.Ct. 677. See also, e.g., Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979) (statutes employing the usage “person” are ordinarily construed to exclude the government); Lunday-Thagard Co. v. U.S. Dep’t of Interior, 773 F.2d 322, 324 (Temp. Emer. Ct. App. 1985) (“On several occasions it has been held that the government does not come within the definition of a ‘person.’”) (citing United States v. Cooper Corp., 312 U.S. 600, 604, 61 S.Ct. 742, 85 L.Ed. 1071 (1941) and United Mine Workers of Am., 330 U.S. at 275, 67 S.Ct. 677).
Although exceptions may arise, such exceptions warrant considered analysis, not presumptive waiver by silence. In United States v. Cooper Corp., the Court guided such analysis:
[TJhere is no hard and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law.
Id. at 605, 61 S.Ct. 742.
The long-standing rule excluding the government from implicit inclusion as a statutory “person” applies to situations where the government would benefit from such inclusion, as well as situations where such inclusion would burden the government. For example, in United States v. Fox, the Court held that a devise of real estate to the Federal government was void because the New York Statute of Wills only permitted devises of land “to any person capable by law of holding real estate,” and the federal government was neither a natural nor an artificial person. 94 U.S. 315, 321, 24 L.Ed. 192 (1876). The Court stated:
The term ‘person’ as here used applies to natural persons, and also to artificial persons,—bodies politic, deriving their existence and powers from legislation,— but cannot be so extended as to include within its meaning the Federal government. It would require an express definition to that effect to give it a sense thus extended.
Id. As summarized in Corpus Juris:
A statute regulating only persons and corporations does not include the government itself unless a contrary intention is clearly expressed. Thus, the word “person” used in a statute will not be construed so as to include the sovereign, whether the United States, or a state, or a government agency, or a city or town. However, the word may include the sovereign where the legislative intent to do so is manifest or where courts recognize the exception whereby government agencies are only excluded from the operation of general statutory provisions if their inclusion would result in an infringement upon sovereign governmental powers.
82 C.J.S. Statutes § 391 (citations omitted).
The CBM statute does not mention infringement litigation in the Court of Federal Claims, while reciting the analogous actions in the district courts and the Inter *1374 national Trade Commission. My colleagues suggest that the legislative intent was to silently give the United States the benefit' of the AIA, but not the burden of the estoppel provision. The estoppel provision, however, is the quid pro quo that underlay enactment of the AIA.
The estoppel provision is the backbone of the AIA, for it is through estoppel that the AIA achieves its purpose of expeditious and economical resolution of patent disputes without resort to the courts. The government so emphasized, throughout the gestation of the AIA. Then-Director of the PTO Dudas told the Congress:
[T]he estoppel needs to be quite strong ... any issue that you raised or could have raised ... you can bring up no place else. That second window, from the administration’s position is intended to allow nothing-a complete alternative to litigation.
Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm, on the Judiciary, 110th Cong. 13 (2007) (statement of Director Jon Dudas). When the final version of the legislation was enacted, successor-Director Kappos reiterated the importance of the estoppel provision:
If I can say that in my own words also, that I believe there are significant advantages for patentees who successfully go through the post-grant system—in this case inter partes review—because of those estoppel provisions. Those es-toppel provisions mean that your patent is largely unchallengeable by the same party.
America Invents Act: Hearing on H.R. 1219 Before the House Comm, on the Judiciary, 112th Cong, 52-53 (2011) (statement of Director David Kappos).
My colleagues would grant the United States the benefit of post-grant challenge in the PTO, but would omit the statute’s estoppel against raising the same challenge in court. This statutory balance, of administrative challenge in exchange for finality, is the foundation of the America Invents Act. It may be that recognition of the complexity of binding the government to estoppel led to the omission of the government. We can only speculate as to the reason, but it is clear that the government is not included as a “person” subject to the AIA.[1]
The panel majority argues that erring on the side of prudence is “letting the tail wag the dog.” Maj. Op. 1366. The majority *1375 assumes that Congress gave no particular thought to whether the government should be subject to the estoppel provision. However, the dominant purpose of finality and economy of litigation is based on the estop-pel provision and informs any analysis of the statutory plan. See United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) (“We do not, however, construe statutory phrases in isolation; we read statutes as a whole.”).
The panel majority errs in stating that the proper inference is that the government is a “person” under this statute, for the vast weight of statute and precedent requires the opposite inference. One might wonder why the drafters of the America Invents Act did hot assure inclusion of the United States in post-grant proceedings, for the government is a participant in the patent system, and a sufficiently frequent plaintiff or defendant to be recognized.
Can my colleagues be correct in concluding that, over the lengthy and vigorous gestation of the AIA, it did not occur to anyone to consider the participation of the government? If inclusion of the United States and its agencies was indeed intended, as the majority holds, is this silence merely a matter of legislative error, subject to repair by the judiciary?
The theory that the United States was accidentally omitted as a “person” subject to the AIA is contrary to the vast body of precedent. When the. government is excluded on the face of a statute, the presumption that the legislature intended to exclude the government may only be overcome by strong evidence of intent to include. Such evidence is conspicuously lacking here.
Indeed, inclusion of the government as a “person”, assumed by the majority, requires the assumption that legislators intended to grant the government access to post-grant proceedings in the PTAB while also intending to remove the government from the estoppel provision, thereby giving the government “two bites at the apple,” in the majority’s words. Such an irregular assumption, with no hint of support in the statute or legislative history, cannot be countenanced. “The words of the statute should be read in context, the statute’s place in ‘the overall statutory scheme’ should be considered, and the problem Congress sought to solve should be taken into account.” PDK Labs. Inc. v. U.S. D.E.A., 362 F.3d 786, 796 (D.C. Cir. 2004) (quoting Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)).
Even if waiver of a jurisdictional defect were available, the court is responsible to assure that waiver comports with the statutory purpose. See Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1251 (Fed. Cir. 2005) (we “retainf ] case-by-case discretion over whether to apply waiver”). In addition, “[ujnder certain circumstances, we may consider issues not previously raised ,.,. ” Automated Merch. Sys., Inc. v. Lee, 782 F.3d 1376, 1379 (Fed. Cir. 2015). Such circumstances include whether “the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice” and whether “the issue presents significant questions of general impact or of great public concern” or “the interest of substantial justice is at stake.” Id. (citations omitted). This question requires resolution.
The statutory record contains no foundation for this court’s departure from the explicit text of the legislation'. The government is not a “person” to whom the post-grant procedures of the AIA are available. Thus I would vacate the decision of the Board, for the proceeding is beyond the Board’s statutory authority. See 2 Richard J. Pierce Jr., Administrative Law Treatise § 14.2, at 1185 (5th ed. 2010) (“An agency has the power to resolve a dispute or an *1376 issue only if Congress has conferred on the agency statutory jurisdiction to do so.”); 5 U.S.C. § 706(2)(c).

. The panel majority states that in this dissent I "engage[] in mere speculation that Congress intended to exclude, the government from filing petitions despite the lack of a record or any indication that it intended this result.” Maj, Op, 1366. I do not speculate as to the meaning of "person”; its meaning has been defined by Congress for legislative use, Nor do I speculate as to the decade of legislative history of the America Invents Act, As Justice Frankfurter wrote, statutory interpretation “demands awareness of certain presuppositions.” Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947), The majority ignores the extensive backdrop of law and history on which the AIA was enacted.
In doing so, the majority construes the statutory provision in isolation, declining to consider the purpose and intent of the legislature in exclusion of the Government from the es-toppel provisions. See Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) (It is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, we must not be guided by a single sentence or member of a sentence, but should look to the provisions of the whole law, and to its object and policy.”) (quotations and citations omitted). The only "rewriting of the plain language of a statute,” Maj. Op. 1366, comes from the pen of the majority, who ignores the presumption of exclusion of the government from the scope of "person,”